**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| TERRELL BARKER, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br> v.<br><br>VITAL PHARMACEUTICALS, INC., d/b/a VPX Sports, a Florida corporation<br><br>      Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

  Plaintiff Terrell Barker ("Plaintiff"), through his undersigned attorneys, Barbat, Mansour & Suciu PLLC, Kohn, Swift & Graf, P.C. and Greg Coleman Law, brings this Class Action Complaint against Defendant VITAL PHARMACEUTICALS INC., d/b/a VPX Sports ("Defendant"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys:

<u>**NATURE OF THE ACTION**</u>

  1.  Defendant formulates, manufactures, advertises and sells the popular "BANG" branded caffeinated and non-caffeinated energy drink products (collectively the "Products") throughout the United States, including in Illinois. Defendant markets its Products in a systematically misleading manner, by misrepresenting that its Products contain ingredients that they do not in fact contain, and that the ingredients are potent, when in fact they are present, if at all, in doses so low as to be ineffective (the "Misrepresentations").

  2.  Because Defendant's sales are driven by consumers seeking these ingredients and

their purported effects, Defendant prominently advertises their presence in its Products on the Products themselves, as well as in their marketing.

3.      Plaintiff and each of the Class members accordingly suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices set forth herein, and seek compensatory damages, statutory damages, and declaratory and injunctive relief.

## JURISDICTION AND VENUE

4.      This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(d).  The amount in controversy in this class action exceeds $5,000,000, exclusive of interest and costs, and there are numerous Class members who are citizens of states other than Defendant's states of citizenship.

5.      This Court has personal jurisdiction over Defendant in this matter. The acts and omissions giving rise to this action occurred in the state of Illinois.  Defendant has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers and/or representatives, operated, conducted, engaged in and carried on a business venture in this state and/or maintained an office or agency in this state, and/or marketed, advertised, distributed and/or sold products, committed a statutory violation within this state related to the allegations made herein, and caused injuries to Plaintiff and putative Class Members, which arose out of the acts and omissions that occurred in the state of Illinois, during the relevant time period, at which time Defendant was engaged in business activities in the state of Illinois.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and because Defendant transacts business and/or has agents within this District and has intentionally availed itself of the laws and markets within this district.

2

## PARTIES

7.      Plaintiff Terrell Barker is a citizen of Illinois who resides in University Park, Illinois.  Plaintiff purchased BANG from GNC.com on September 19, 2018.  Prior to purchase, Plaintiff carefully read the BANG labeling, including the representation that it contained "CREATINE," "BRANCHED CHAIN AMINO ACIDS," and "COENZYME Q$_{10}$."  Plaintiff understood this to mean that the BANG contained these ingredients, and moreover that the Products contained them in dosages that were "POTENT" as claimed both on the front of the Product label, as well as on the back.  Plaintiff relied on these claims in that he would not have purchased BANG, or would have only been willing to pay a substantially reduced price for BANG, had he known that this representation was false and misleading.

8.      Defendant VPX Sports is a Florida corporation with its principal place of business at 1600 North Park Drive, Weston, FL 33326.

## FACTUAL ALLEGATIONS

9.      At all relevant times, Defendant has marketed its BANG Products in a consistent and uniform manner relating to both ingredients, potency, and effect.  Defendant sells BANG Products in all 50 states on its website and through various distributors.

10.      Defendant labels and advertises all of its BANG Products in a manner that leads consumers to believe that they fuel the brain and body and that, unlike the competition, it is an honest company that accurately represents the products' ingredients and efficacy.  Contrary to these representations, as shown below, testing commissioned by Plaintiff's attorney confirms that the products do not contain the represented ingredients and potency.  Such representations constitute an express warranty regarding the Products' content.

***Defendant's Deceptive Advertising and Labeling***

11.     On its website, Defendant represents that all of its "raw materials are received into the warehouse, quarantined, and then tested for efficacy in our own state of the art laboratories to ensure we only provide the end-consumer with the best product possible."  Jack Owec, the CDEO of BANG, states on the website that:

**Supplement Scams Costing you Money and Muscle!**

As previously mentioned, *one of the reasons I entered into the supplement industry was my disgust for unscrupulous supplement manufacturers who were intentionally mislabeling their supplements and ripping the public off.*  However, let's be crystal clear; my broader vision was to create supplements that were super potent and highly effective – supplements so effective that they had the power to positively impact lives and radically improve health in a very short period of time.

Surprisingly, supplements aren't much better today than they were 24 years ago. Almost every single sports nutrition company offers a worthless, muscle-destroying pre-workout called a "concentrate". It is a rigged system where the health food or online store collaborate to push a concentrate on you because of the massive profit that they make at your expense! You lose both money and muscle, while they profit handsomely. It is not just the small companies either that are ripping you off. One of the biggest protein manufacturers in the world was recently tested to be 30% under protein claimed on the label and also contained 30% of what I refer to as "non-protein filler". Compare that to our **SRO™ Zero Carb® Protein** which contains the highest protein content per pound and per ounce! Further scams are evident by the largest seller of ready to drink protein beverages that tested 32% under label claim. This is insane my friends. There is a willful and purposeful intent to rip you off. *Worse yet, you have to wonder what the hell is in these products that you are drinking that isn't protein!*

**Quality Control: Truth in Labeling**

This is why VPX/Bang/Redline does things differently! *All of our raw materials are received into the warehouse, quarantined, and then tested for efficacy in our own state of the art laboratories to ensure that we only provide the end-consumer with the best product possible.* Raw materials are sampled and taken to the quality control lab for analysis. Our analysis of each ingredient is conducted by tests on several levels; first through our high-performance liquid chromatography (HPLC) units that confirm the identity and purity levels of the ingredient; and second, the physical characteristics of the compound are verified through our infrared spectroscopy (IR) machine. Once the test results meet our set release specifications and the supplier's certificate of analysis, the ingredient is released

and can be utilized within manufacturing. Maintaining this high level of testing ensures that every VPX product is manufactured to its intended design and that we continually produce products that meet and exceed our customers' expectations.[1]

12.     Further, customers are told, on the BANG Product label: "Power up with BANG's potent brain & body-rocking fuel: Creatine, Caffeine, CoQ10 & BCAAs (Branched Chain Amino Acids)."

13.     The BANG Product labels also specifically state the provide "Potent Brain and Body Fuel," and the labels highlight the amount of Creatine, Branched Chain Amino Acids, and Coenzyme $Q_{10}$ contained within.  Each Product lists those ingredients in circular fashion around the top lip of the Product container, again on the information panel, and a third time in the Nutrition Facts panel.

14.     Likewise, VPX's website tells users to "Power up with BANG's potent brain & body-rocking fuel: Creatine, Caffeine, & BCAAs (Branched Chain Amino Acids)."[2]

15.     For each Product quantity (i.e. a pack of four, twelve, etc…), the VPXSports.com website repeats these claims of ingredients and potency.

16.     The BANG Products that repeat these claims are: Cotton Candy, Lemon Drop, Root Beer, Blue Razz, Sour Heads, Peach Mango, Star Blast, Power Punch, Champagne, Black Cherry Vanilla, Pina Colada, Purple Guava Pear, Citrus Twist, Purple Haze, Cherry Blade Lemonade, Lemon Drop Sweet Tea, Sweet Ice Tea, Rainbow Unicorn, Georgia Peach Sweet Tea, Sour Heads, Cotton Candy, Black Cherry Vanilla, Purple Guava Pear, and Cherry Blade Lemonade.

---

[1] https://vpxsports.com/about-us/ (emphasis added) (last visited 10/12/18).

[2] https://vpxsports.com/product/bang-12-pack/?doing_wp_cron=1539219060.9104490280151367187500 last visited October 10th, 2018.

17.     The BANG ENERGY Instagram account includes a header that again touts the presence of these ingredients: "⚹Caffeine, Super Creatine, BCAAs, CoQ10"[3]

18.     The product description for BANG under Defendant's VPX account on Amazon.com also repeats these claims: "Potent Brain &Amp; Body-Rocking Fuel: Creatine, Caffeine, Coq10 &Amp; Bcaas (Branched Chain Amino Acids). Benefits Contains Creatine, Caffeine, Coq10 And Bcaas"[4]

19.     Defendant's Product description on GNC.com includes these same claims about ingredients, and potency.[5]

20.     Creatine monohydrate is one of the most popular dietary supplements in the world and is believed to have a variety of beneficial effects on both physical performance and body composition.[6]

21.     Creatine has been shown, in numerous scientific studies to increase strength and fat free mass. It has been shown beneficial in exercise modalities ranging from high-intensity sprints to endurance work. The mechanism of action is thought to be a result of the build-up of creatine stores in the body, which in turn allows for more rapid regeneration of adenosine triphosphate.[7]

---

[3] https://www.instagram.com/bangenergy/?hl=en last visited October 11th, 2018.

[4]https://www.amazon.com/gp/product/B07GSCB9D9/ref=s9_dcacsd_dcoop_bw_cr_x__a_w last accessed October 11th 2018.

[5]  https://www.gnc.com/energyupgrade/VPXBANG.html#q=bang%2Benergy&lang=default&start=1  last accessed October 12th, 2018.

[6] J. David Branch, *Effect of Creatine Supplementation on Body Composition and Performance: A Meta-analysis*, Int J Sport Nutr Exerc Metab. 2003 Jun;13(2):198-226.

[7] Cooper, Robert et al. *Creatine Supplementation with Specific View to Exercise/sports Performance: An Update*, Journal of the International Society of Sports Nutrition 9 (2012): 33. *PMC*. Web. 10 Oct. 2018.

22.     Creatine monohydrate may also have beneficial effects on cognitive function in healthy populations, such as improving short-term memory and intelligence/reasoning[8], and may show similar positive effects in diseased states (such as Alzheimer's, Huntington's, and Parkinson's) although more research is needed[9].

23.     Likewise, Coenzyme $Q_{10}$ has been implicated in ameliorating cognitive-related decline in diseased states[10], but also in physical performance[11], and the Mayo Clinic has noted that "it is believed that this supplement might improve your physical performance.…[12]"

24.     Finally, Branched Chain Amino Acids have been shown to have beneficial effects on skeletal muscle such as reducing exercise-induced muscle damage and soreness[13], as well as participating both directly and indirectly in numerous biochemical brain functions[14].

25.     Defendant's Products' labels plainly state that they contain a "potent brain and body-rocking fuel: Creatine, Caffeine, $CoQ_{10}$ & BCAAs (Branched Chain Amino Acids)."  This

---

[8] Avgerinos, et al., *Effects of creatine supplementation on cognitive function of healthy individuals: A systematic review of randomized controlled trials*, Experimental Gerontology, 108, 166-173, 15 July 2018.

[9] Smith, Rachel N., Amruta S. Agharkar, and Eric B. Gonzales. *A Review of Creatine Supplementation in Age-Related Diseases: More than a Supplement for Athletes*, *F1000Research* 3 (2014): 222. *PMC*. Web. 10 Oct. 2018.

[10] Hernández-Camacho, Juan D. et al., *Coenzyme Q10 Supplementation in Aging and Disease*, Frontiers in Physiology 9 (2018): 44. PMC. Web. 10 Oct. 2018.

[11] Fischer, Alexandra et al., *Coenzyme $Q_{10}$ Status as a Determinant of Muscular Strength in Two Independent Cohorts,* Ed. Gotthard Kunze. *PLoS ONE* 11.12 (2016): e0167124. PMC. Web. 10 Oct. 2018.

[12] https://www.mayoclinic.org/drugs-supplements-coenzyme-q10/art-20362602 last accessed October 9, 2018.

[13] Yoshiharu, S et al., *Nutraceutical Effects of Branched-Chain Amino Acids on Skeletal Muscle*, The Journal of Nutrition, Volume 136, Issue 2, 529S–532S, 2006.

[14] John D. Fernstrom, *Branched-Chain Amino Acids and Brain Function*, The Journal of Nutrition, Volume 135, Issue 6, 1539S–1546S, 2005

representation is identical throughout all of Defendant's BANG Products:



### *BANG Product Testing Confirms Defendant's Deception*

26.     Contrary to Defendant's uniform representations on the BANG Product labels, based upon testing commissioned by Plaintiff's attorneys, the Products were shown not to contain Creatine.  A true and correct copy of the Product testing commissioned by Plaintiff's attorneys is attached hereto as **Exhibit A**.

27.     Based upon testing commissioned by Plaintiff's attorneys, the Products were shown not to contain Coenzyme $Q_{10}$.  A true and correct copy of the Product testing commissioned by Plaintiff's attorneys is attached hereto as **Exhibit B**.

28.     Based upon testing commissioned by Plaintiff's attorneys, the Products were shown to contain only .09g of the single Branched Chain Amino Acid Leucine.  Isoleucine and

Valine, the other Branched Chain Amino Acids, were not found. A true and correct copy of the Products testing commissioned by Plaintiff's attorneys is attached hereto as **Exhibit C**.

***Defendant's Deceptive Statements are Illegal***

29.     Plaintiff and the Classes purchased and consumed the Products because they believed, based on the misleading product label and the information on Defendant's website, and identical misleading information listed on gnc.com and other retailers' websites that the Products contained the ingredients stated on the Products' labeling and moreover that the Products contained them in dosages that were "POTENT" as claimed both on the front of the Product label, as well as on the back.

30.     Defendant's labeling and advertising of the Products was misleading to Plaintiff and the Classes.

31.     Plaintiff and the Class members were in fact misled by Defendant's misrepresentations regarding the efficacy of the Product.

32.     The difference between the Products as promised and the Products as sold is significant. The lack and reduction of benefits provided to consumers by the Products diminishes the actual value of the Products.

33.     Plaintiff and the Class members would not have bought Defendant's Products or would have paid less for Defendant's Products if they had known they did not contain the ingredients as advertised.

34.     Defendant's deceptive statements violate 21 U.S.C. § 343(a)(1), which deems food misbranded when the label contains a statement that is "false or misleading in any particular."

35.     The United States Food and Drug Administration (the "FDA") promulgated regulations for compliance with the Federal Food, Drug, and Cosmetic Act ("FDCA") and the Dietary Supplement Health and Education Act (the "DSHEA") at 21 C.F.R. § 101, et seq. Defendant's Product is misbranded under 21 C.F.R. § 101, et seq.

36.     Illinois has also expressly adopted the federal food labeling requirements as its own: "[a] federal regulation automatically adopted pursuant to this Act takes effect in this State on the date it becomes effective as a Federal regulation." 410 ILCS 620/21. Thus, a violation of federal food labeling laws is an independent violation of Illinois law and actionable as such.

37.     Pursuant to 410 ILCS 620/11, which mirrors 21 U.S.C. § 343(a), "[a] food is misbranded – (a) If its labeling is false or misleading in any particular."

38.     The introduction of misbranded food into interstate commerce is prohibited under the FDCA and all state parallel statutes cited in this Complaint.

39.     Also, the Illinois Consumer Fraud and Deceptive Business Practices Act protects Defendant's consumers, and provides:

> § 2. Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

40.     Defendant intended for Plaintiff and the Class members to be deceived or misled.

41.     Defendant's deceptive and misleading practices proximately caused harm to the Plaintiff and the Class.

42. Plaintiff and Class members would not have purchased the Products, or would have not paid as much for the Products, had they known the truth about the mislabeled and falsely advertised Products.

## CLASS ACTION ALLEGATIONS

43. Plaintiff brings this action individually and as representatives of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23, on behalf of the below-defined Classes:

**National Class**: All persons in the United States who purchased the Products.

**Consumer Fraud Multi-State Class**: All persons in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington who purchased the Products.[15]

**Illinois Class**: All persons in the State of Illinois who purchased the Products.

44. Excluded from the Classes are: (1) Defendant, and any entity in which Defendant has a controlling interest or which have a controlling interest in Defendant; (2) Defendant's legal representatives, assigns and successors; and (3) the judge(s) to whom this case is assigned and any member of the judge's immediate family.

45. Plaintiff reserves the right to redefine the Class(es), and/or requests for relief.

46. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

---

[15] The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: California (Cal. Bus. & Prof. Code §17200, et seq.); Florida (Fla. Stat. §501.201, et seq.); Illinois (815 Ill. Comp. Stat. 505/1, et seq.); Massachusetts (Mass. Gen. Laws Ch. 93A, et seq.); Michigan (Mich. Comp. Laws §445.901, et seq.); Minnesota (Minn. Stat. §325F.67, et seq.); Missouri (Mo. Rev. Stat. §407.010, et seq.); New Jersey (N.J. Stat. §56:8-1, et seq.); New York (N.Y. Gen. Bus. Law §349, et seq.); and Washington (Wash. Rev. Code §19.86.010, et seq.).

47.     The members of the proposed Class(es) are so numerous that joinder of all members is impracticable.

48.     The exact number of Class members is unknown.  Due to the nature of the trade and commerce involved, as well as the number of online and direct complaints, Plaintiff believes the Class consists of thousands of consumers.

49.     Common questions of law and fact affect the right of each Class member, and a common relief by way of damages is sought for Plaintiff and Class members.

50.     Common questions of law and fact that affect Class members include, but are not limited to:

        a.      Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive, false, or misleading;

        b.      Whether Defendant's actions violate the State consumer fraud statutes invoked below;

        c.      Whether Defendant breached an express warranty to Plaintiff and Class members;

        d.      Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class members;

        e.      The nature and extent of damages, restitution, equitable remedies, and declaratory and injunctive relief to which Plaintiff and the Class are entitled; and

        f.      Whether Plaintiff and the Class should be awarded attorneys' fees and the costs of the suit.

51.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of himself and the other Class members.  Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, are pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

52.     Additionally, the factual basis of Defendant's conduct is common to all Class members and represents a common thread of misconduct resulting in injury and damages to all members of the Class.

53.     The named Plaintiff will fairly and adequately assert and protect the interests of the Class.  Specifically, he has hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the Class; and they have no conflict of interests that will interfere with the maintenance of this class action.

a.   The common questions of law and fact set forth herein predominate over any questions affecting only individual Class members;

b.   The Class is so numerous as to make joinder impracticable but not so numerous as to create manageability problems;

c.   There are no unusual legal or factual issues which would create manageability problems, and depending on discovery, manageability will not be an issue as much information is solely in Defendant's possession;

d.   Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendant when confronted with incompatible standards of conduct;

e.   Adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests; and

f.   The claims of the individual Class members are small in relation to the expenses of litigation, making a Class action the only procedure in which Class members can, as a practical matter, recover. However, the claims of individual Class members are collectively large enough to justify the expense and effort in maintaining a class action.

## CLAIMS FOR RELIEF

## COUNT I

### Violation Of State Consumer Fraud Acts
### (On Behalf Of The Multi-State Class)

54.     Plaintiff re-alleges and incorporate by reference the allegations contained in Paragraphs 1 through 53, as though set forth fully herein.

55.     The Consumer Fraud Acts of the States in the Multi-State Class[16] prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

56.     Defendant intended that Plaintiff and each of the other members of the Multi-State Class would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

57.     Had the truth been known, Plaintiff and other Multi-State Class Members would not have purchased Defendant's Products, or would not have paid as much for the Products.

58.     As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Multi-State Class have sustained damages in an amount to be proven at trial.

59.     In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## COUNT II

### Violation Of The Illinois Consumer Fraud Act
### (In The Alternative To Count I And On Behalf Of The Illinois Class)

60.     Plaintiff incorporates paragraphs 1 through 53 as if fully set forth herein.

---

[16] California (Cal. Bus. & Prof. Code §17200, et seq.); Florida (Fla. Stat. §501.201, et seq.); Illinois (815 Ill. Comp. Stat. 505/1, et seq.); Massachusetts (Mass. Gen. Laws Ch. 93A, et seq.); Michigan (Mich. Comp. Laws §445.901, et seq.); Minnesota (Minn. Stat. §325F.67, et seq.); Missouri (Mo. Rev. Stat. §407.010, et seq.); New Jersey (N.J. Stat. §56:8-1, et seq.); New York (N.Y. Gen. Bus. Law §349, et seq.); and Washington (Wash. Rev. Code §19.86.010, et seq.).

61.     The Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, et seq., prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce.  The ICFA is to be liberally construed to effectuate its purpose.

62.     Defendant's conduct in misrepresenting the benefits of its Products constitute the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentation, and unfair practices in the conduct of Defendant's trade or commerce.

63.     Defendant intended that Plaintiff and the Illinois Class Members would rely on their misrepresentations.

64.     Defendant's misrepresentations are material because they concern the type of information upon which a reasonable consumer would be expected to rely in making a decision whether to purchase the Products.

65.     Because Defendant is in the business of selling supplement products, including energy drinks, Defendant committed the unfair and deceptive acts in the conduct of its trade and commerce.

66.     Defendant's practice of misrepresenting the Products is also unfair because it offends public policy and is immoral, unethical, and unscrupulous because Illinois consumers are being misled about the very efficacy and purpose of the product.  Misrepresenting the Products offends the public's expectation to be told the truth about the products they are buying.

67.     Defendant's conduct causes substantial injury to consumers.

68.     Plaintiff and Illinois Class Members were deceived by the misleading labeling and advertising of the Products and suffered economic damages as a proximate result of Defendant's unlawful conduct as alleged herein, including the difference between the actual value of the Product and the value of the Products if it had been as represented.

69.     Had the truth been known, Plaintiff and other Illinois Class Members would not have purchased Defendant's Products, or would not have paid as much for the Products.

70.     Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

71.     Plaintiff also seeks to enjoin Defendant's ongoing deceptive practices relating to its claims on the Products' labels and advertising.

## COUNT III

### Breach Of Express Warranty
### (On Behalf Of The National Class)

72.     Plaintiff incorporates paragraphs 1 through 53 as if fully set forth herein.

73.     Plaintiff, and each member of the National Class, formed a contract with Defendant at the time Plaintiff and the other members of the National Class purchased the Products.  The terms of the contract included the promises and affirmations of fact made by Defendant on the Products' packaging and through marketing and advertising, as described above.  This labeling, marketing and advertising constitute express warranties and became part of the basis of bargain, and are part of the standardized contract between Plaintiff and the members of the National Class and Defendant.

74.     Plaintiff and the National Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

75.     Defendant breached express warranties about the Products and their qualities because Defendant's statements about the Products were false and the Products do not conform to Defendant's affirmations and promises as described above.

76.     Had they known the true nature of the Products, Plaintiff and each of the members of the National Class would not have purchased the Products, or would not have paid as much for the Products.

77.     As a result of Defendant's breach of warranty, Plaintiff and each of the members of the National Class have been damaged in the amount of the purchase price of the Products and any consequential damages resulting from their purchases.

78.     Furthermore, Defendant had actual knowledge of the defect in the Products purchased by Plaintiff, as well as the Products purchased by other members of the National Class, because: (a) it has knowledge of various studies concluding the inefficacy of the ingredients included in the formulation of the Products; (b) it had actual knowledge of the ingredients and quantities of the ingredients in its Products by virtue of its own Products' testing and it knows that the affirmations and representations it makes concerning the ingredients and quantities on the Products' labeling and advertising is false; and (c) there exist several other lawsuits against Defendant that also contend that Defendant's statements about the Products were false and the Products do not conform to Defendant's affirmations and promises as described above.

## COUNT IV

### Unjust Enrichment
### (On Behalf Of The Nationwide Class and Illinois Subclass)

79.     Plaintiff incorporates paragraphs 1-53 as if fully set forth herein.

80.     Plaintiff brings this cause of action on behalf of the Nationwide Class and/or the Illinois Subclass.

81.     Plaintiff and Class Members conferred a benefit on Defendant when they purchased BANG Products, of which Defendant had knowledge.  By its wrongful acts and

omissions described herein, including selling the BANG Products, which do not contain the represented ingredients CREATINE," "BRANCHED CHAIN AMINO ACIDS," and "COENZYME Q10, and are incapable of providing the claimed benefits of those ingredients, Defendant was unjustly enriched at the expense of Plaintiff and putative Class Members.

82.     Plaintiff's detriment and Defendant's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

83.     Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and putative Class Members under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit.  It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the BANG Products.

84.     Plaintiff and putative Class Members have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the BANG Products on the same terms or for the same price had they known that the Products did not contain CREATINE," "BRANCHED CHAIN AMINO ACIDS," and "COENZYME Q10, and are incapable of providing the claimed benefits of those ingredients and were not fit for their intended use.

85.     Defendant either knew or should have known that payments rendered by Plaintiff and putative Class Members were given and received with the expectation that the BANG Products actually contained "BRANCHED CHAIN AMINO ACIDS," and "COENZYME Q10, and were capable of providing the claimed benefits of those ingredients as represented by Defendant in advertising, on Defendant's websites, and on the Products' labels and packaging.  It is inequitable for Defendant to retain the benefit of payments under these circumstances.

86.     Plaintiff and putative Class Members are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

87.     When required, Plaintiff and Class Members are in privity with Defendant because Defendant's sale of the BANG Products was either direct or through authorized sellers. Purchase through authorized sellers is sufficient to create such privity because such authorized sellers are Defendant's agents for the purpose of the sale of the BANG Products

88.     As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for its inequitable and unlawful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action and for judgment to be entered against Defendant as follows:

A.      Enter an order certifying the proposed Class (and subclasses, if applicable), designating Plaintiff as the class representative, and designating the undersigned as class counsel;

B.      Declare that Defendant is financially responsible for notifying all Class members of the problems with the Products;

C.      Declare that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of the Products, or order Defendant to make full restitution to Plaintiff and the members of the Class;

D.      Defendant shall audit and reassess all prior customer claims regarding the Products, including claims previously denied in whole or in part;

E.      For economic and compensatory damages on behalf of Plaintiff and all members of the Class;

F.      For actual damages sustained and/or treble damages;

G.      For punitive or exemplary damages;

H.    For injunctive and declaratory relief;

I.    For reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

J.    For such other and further relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Date:   October 12, 2018                          Respectfully Submitted,

                                          By:  /s/ Jonathan Shub
                                               Jonathan Shub
                                               Kevin Laukaitis
                                               **KOHN, SWIFT & GRAF, P.C.**
                                               1600 Market Street, Suite 2500
                                               Philadelphia, PA 19103
                                               Tel: 215-238-1700
                                               jshub@kohnswift.com
                                               klaukaitis@kohnswift.com

                                               Nick Suciu III
                                               **BARBAT, MANSOUR & SUCIU PLLC**
                                               1644 Bracken Rd.
                                               Bloomfield Hills, Michigan 48302
                                               Tel: 313-303-3472
                                               nicksuciu@bmslawyers.com

                                               Gregory F. Coleman
                                               **GREG COLEMAN LAW PC**
                                               First Tennessee Plaza
                                               800 S. Gay Street, Suite 1100
                                               Knoxville, Tennessee 37929
                                               Tel: 865-247-0080
                                               greg@gregcolemanlaw.com

                                               ***Counsel For Plaintiff***
                                               ***And The Proposed Putative Classes***