**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TERRELL BARKER, individually and on behalf | ) | |
| Of all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:18-CV-06898 |
| | ) | |
| v. | ) | |
| | ) | |
| VITAL PHARMACEUTICALS, INC., d/b/a | ) | |
| VPX SPORTS, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT**
**OF ITS 28 U.S.C. § 1404(A) MOTION TO TRANSFER VENUE**

**I.      INTRODUCTION**

This lawsuit arises from a *single online purchase* of an unspecified BANG® energy drink from a third-party retailor (GNC.com) that could have been transacted anywhere in the U.S. with an internet connection, alleging false advertising claims against the product's Florida-based manufacturer, VPX Pharmaceuticals, Inc., d/b/a VPX Sports (hereinafter, "VPX"), on behalf of a putative nationwide class of all purchasers.  This suit is brought by the same three law firms who, three days after filing the Complaint in this case, filed a nearly verbatim complaint against VPX in the Northern District of California.  The only discernable reason for the same lawyers to file copycat actions in the 7th *and* 9th Circuits (despite the inconvenience, inefficiency, and impracticality of such simultaneous multidistrict litigation), far from, not only their homes, but also from the locus of the dispute in Florida, is grounded in forum-shopping, i.e., that courts in those districts have specifically rejected the 11th Circuit's "administrative feasibility"

requirement that their putative class actions may not satisfy.[1]

Altogether, there are now five nearly identical putative class actions pending against VPX in three district courts, all of which: take issue with the *same* product; assert the *same* false advertising allegations; raise the *same* legal issues; seek to represent the *same* nationwide class; and, request the *same* injunctive relief.[2] <u>*All five cases*</u>, including this one, belong in the most logical and convenient forum, which is the Southern District of Florida.[3]

VPX is headquartered in <u>Florida</u> and presently employs over 325 of its residents. All of the decisions giving rise to this dispute were made in <u>Florida</u>. All significant (meaning, not interchangeable) witnesses live in <u>Florida</u>. All critical documents, physical evidence, and relevant premises are in <u>Florida</u>. Two nearly identical putative nationwide class actions are now pending in <u>Florida</u>. Florida—without question—is the epicenter of this dispute. It has the localized interest in its resolution, the less congested docket (*moving **195% to 229% faster***), is where any injunctive relief must be carried out, and is, on balance, the most convenient and fair forum for the litigants and witnesses.

By contrast, although Plaintiff resides in this District, countless interchangeable plaintiffs

---

[1] *See e.g. Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 71 (N.D. Ill. 2016) (following *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 658 (7th Cir. 2015) and noting that, "[a]lthough some federal courts have applied th[e] "heightened ascertainability requirement," the Seventh Circuit has expressly disavowed it.") (internal citation omitted); and, *Johnson v. Serenity Transp., Inc.*, 2018 U.S.Dist.LEXIS 129241, *25 (N.D. Cal. 2018) (following the 9th Circuit in *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017), which "declin[ed] to adopt an administrative feasibility requirement.").

[2] VPX requests Judicial Notice, pursuant to Fed. R. Evid. 201, of the four additional actions, which are as follows: *Imran v. Vital Pharmaceuticals, Inc.*, No. 18:cv-5758 (N.D. Cal. Sept. 19, 2018) ("*Imran*"); *Madison v. Vital Pharmaceuticals, Inc.*, No. 3:18-cv-06300-JST (N.D. Cal. Oct. 15, 2018) ("*Madison*"); *Shirley St. Fort- Nwabuku v. Vital Pharmaceuticals, Inc.*, No. 18-cv-62823 (S.D. Fla. Nov. 19, 2018) ("*St. Fort- Nwabuku*"); and *Nguyen v. Vital Pharmaceuticals, Inc.*, No. 19-cv-60261 (S.D. Fla Jan. 30, 2019) ("*Nguyen*"). (*See* Declaration of Timothy K. Branson ("Branson Decl.") ¶¶ 3-6, Exhibits A-D (complaints in each).)

[3] VPX has now filed § 1404(a) transfer motions in each of the non-Florida parallel class actions seeking transfer to Florida, including the instant motion, and in *Imran* (on February 6th) and *Madison* (on February 12th).

are found in every district across the county and no alleged event has occurred here that has not

occurred in each of the 50 States.  Moreover, <u>Plaintiff fails to allege *any* nexus between this</u>

<u>District and the asserted claims</u>.  Plaintiff does not allege that the purchase was made in this

District, or that he was exposed to VPX's advertising in this District.  Yet, notwithstanding the

forgoing, Plaintiff's counsel insists VPX should litigate *simultaneously* and *separately* in this

Court, and also in the Northern District of California, the same claims concerning the same

product at issue in the two virtually identical lawsuits pending before the Southern District of

Florida thereby engendering the very duplication of effort and waste of time, money, and judicial

resources that § 1404(a) was designed to avoid.[4]

Thus, this motion, brought pursuant to 28 U.S.C. § 1404(a), presents this Court with the

opportunity to either:  (a) grant the motion and, thereby, redirect attorney-orchestrated

multidistrict litigation to the *only* forum having a prevailing interest in its resolution and

providing convenience to the litigants and witnesses; or, (b) deny the motion and, thereby,

promote the persistent inefficiency of duplicative false advertising class action filings in districts

having no *significant* contact with the dispute but chosen by lawyers for forum-shopping

purposes, including because, despite their inconvenience, precedent suggests those forums are

more likely to certify the class.  As shown herein, justice and convenience to the parties and

witnesses compel transfer to the U.S. District Court for the Southern District of Florida.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

On October 12, 2018, the Complaint was filed on behalf of Terrell Barker, who is alleged

---

[4] Not only is counsel for Plaintiff in this matter the same counsel representing the plaintiff in *Madison* (California case), counsel in *Imran* (California) likewise orchestrated the filing of *Nguyen* (Florida).  (*See* Branson Decl. ¶ 7, Exhibit E (Facebook post by plaintiff's counsel in *Nguyen* stating: "I'm PLEASED to announce … [we] were asked by a major powerhouse class action firm spearheading the California litigation [against VPX Sports] to jump in on the Florida side. Stay tuned.").)

to be a citizen of Illinois residing in University Park. (Complaint ¶ 7.) Plaintiff alleges that he "purchased BANG from GNC.com on September 19, 2018," but does not state from where the alleged virtual-purchase was electronically transacted. (*Id.*) Prior to this singular online purchase, Plaintiff alleges he "carefully read the BANG labeling," also, presumably, on the GNC.com website but, again, without any reference to where the alleged reading occurred. (*Id.*)

Plaintiff alleges that VPX is a Florida corporation with its principal place of business in Weston, Florida, which sits in the Southern District of Florida.[5] (Complaint at ¶ 8.) Plaintiff alleges that VPX made "uniform" misrepresentations about BANG® products through: the product labeling (*Id.*, at ¶¶ 12, 13, 25, 26); the VPX website (*Id.*, at ¶¶ 11, 14, 15, FN2); the BANG® energy Instagram account, i.e. Instagram.com/bangenergy (*Id.*, at ¶¶ 17, FN3); the product description for BANG® under VPX's Amazon.com account (*Id.*, at ¶ 18, FN4); the VPX product description on GNC.com (*Id.*, at ¶ 19, FN5); and, generally, "other retailers' websites." (*Id.*, at ¶ 29.) Plaintiff brings this action individually; and, also as a putative representative of *all purchasers of BANG® products nationwide*; and, separately, on behalf of all purchasers in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington; and, also separately, on behalf of all purchasers in Illinois. (Complaint ¶ 43.) "Plaintiff also seeks to enjoin Defendant's [alleged] ongoing deceptive practices relating to its claims on the Products' labels and advertising." (*Id.*, at ¶ 71.)

As mentioned above, this case is just *one* of *five* parallel class actions pending in district courts across the county that uniformly raise the same factual and legal issues,[6] as follows:

[5] *See* https://www.flsd.uscourts.gov/federal-judicial-districts-florida.
[6] While this motion focuses on the five parallel *class* actions at issue, there are two additional parallel cases pending against VPX brought by VPX's alleged *competitors*, which are: *Monster Energy Company v. Vital Pharmaceuticals, Inc., et al.*, No. 5:18-cv-1882 (C.D. Cal. Sept. 4, 2018) ("*Monster*"); and *ThermoLife Int'l LLC v. Vital Pharmaceuticals, Inc.*, No. 2:18-cv-3233 (D. Ariz. Oct. 10, 2018) ("*ThermoLife*"). (Branson Decl. ¶ 8.) Like the five class action cases, *Monster* and *ThermoLife* also

- **The Same Products.**  All five matters take issue with the same product; that is, BANG® energy drinks containing, among other ingredients, Creatine, CoQ10, and BCAAs.  (*See* Branson Decl. ¶¶ 3-6, Exhibits A-D (operative complaint in each parallel action).)

- **The Same False Advertising Allegations.**  All five matters allege the labeling and advertising of BANG® energy drinks are false and misleadingly imply the product provides more benefits than other, less costly competitors.  (*Id.*)

- **The Same Putative Nationwide Classes and Overlapping State Sub-Classes.**  All five matters are putative nationwide class actions consisting of purchasers of the same product, in addition to various state-specific subclasses.[7]  (*Id.*)

- **The Same Injunctive Relief Sought.**  All five matters seek to enjoin the same alleged misconduct.  (*Id.*)

Several of the actions assert the same state-specific or common law causes of action.  For instance, *Nguyen* (Florida), *Madison* (California), *Imran* (California), and the instant matter all allege violations of Cal. Bus. & Prof. Code § 17200.  (Branson Decl. ¶¶ 3, 4, 6.)  *Imran* (California) and the instant action each allege violations of N.Y. Gen. Bus. Law § 349 and common law claims for breach of warranty and unjust enrichment (Branson Decl., at ¶ 3, Complaint ¶¶ 43; FN 15); whereas, *St. Fort- Nwabuku* (Florida) and this case both allege violations of Fla. Stat. § 501.201and common law unjust enrichment.  (Branson Decl., at ¶ 5; Complaint ¶¶ 43; FN 25.)  Yet, even where the counts cite different state laws, the legal issues are resoundingly similar.  (Branson Decl. ¶¶ 3-6; Complaint ¶¶ 43, FN 15, 54-88.)

## III.  **LEGAL STANDARD**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

---

involve:  the same product, i.e., VPX's BANG® energy drinks; the same factual claims alleging VPX made untruthful statements to boost its market position vis-à-vis the public and competitors; the same legal claims for false advertising, unfair/deceptive trade practices, product mislabeling, or related causes of action; and the same relief, including injunctive relief.  (*Id.*, at ¶ 9.)  VPX moved to transfer venue pursuant § 1404(a) in *ThermoLife* on February 6 and anticipates filing a similar motion in *Monster*.  (*Id.*, at ¶ 10.)

[7] For instance, *Nguyen* (Florida), *Imran* (California), and the instant matter seek to represent a California subclass.  (Branson Decl. ¶¶ 3 and 6, Exhibits A and D; Complaint ¶¶ 43, FN 15.)

28 U.S.C. § 1404(a). The purpose of § 1404(a) "is to prevent the waste of time, energy and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citation and quotation marks omitted; superseded by statute on other grounds).

"The decision to transfer venue under Section 1404(a) requires a weighing of factors for and against transfer." *Rosen v. Spirit Airlines, Inc*., 152 F. Supp. 3d 1055, 1059 (N.D.Ill. 2015) (citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986)). "This weighing 'involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge.'" *Id*. The relevant factors are whether: "(1) venue is proper in this District; (2) venue and jurisdiction are proper in the transferee district; (3) the transferee district is more convenient for both the parties and witnesses; and (4) transfer would serve the interest of justice." *Rosen*, 152 F. Supp. 3d at 1059.

"As the moving party, [VPX] ha[s] the burden of demonstrating that the [Southern District of Florida] is clearly more convenient ***and/or*** that a transfer under 1404(a) will better serve the interests of justice." *Jaramillo v. DineEquity, Inc*., 664 F. Supp. 2d 908, 913 (N.D. Ill. 2009) (emphasis added).

## IV. THIS ACTION SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF FLORIDA PURSUANT TO 28 U.S.C. § 1404(A)

### A. Venue is Proper in this District; and Venue and Jurisdiction Are Proper in The Southern District of Florida.

*First*, Plaintiff alleges venue is proper in this District, which VPX does not dispute. (Complaint ¶ 6 ("Venue is proper in this District….").) Thus, the first § 1404(a) factor is satisfied. *Second*, venue and jurisdiction are proper in the target district because: (1) the Southern District of Florida has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d) (*see*

Complaint ¶ 4, alleging jurisdiction under CAFA); (2) VPX is headquartered in Weston, Florida (*Id.*, at ¶ 8) and, thus, it is subject to the Southern District of Florida's general jurisdiction (*see Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)); and, (3) "a substantial part of the events . . . giving rise to the claim occurred" in Florida (*Id.*, at ¶¶ 9-41) such that venue is proper in that forum pursuant to 28 U.S.C. § 1391(b)(2).

**B.      The Interests of Justice *Alone* Warrant Transfer.**

        "The 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system." *Research Automation, Inc*., 626 F.3d at 978 (citing *Van Dusen*, 376 U.S. at 626-27). "In determining whether to grant a transfer of venue under § 1404(a), the Court gives **strong weight** to the interests of justice, ***which may be <u>determinative</u>***, even if the convenience of parties and witnesses does not favor transfer." *Clendenen v. Steak N Shake Operations, Inc*., 2017 U.S.Dist.LEXIS 72588, *13 (C.D. Ill. 2017) (emphasis added). Stated simply, "[t]he interest of justice inquiry carries greater weight than concern for convenience." *Bull v. Ill. Union Ins. Co.*, 2017 U.S.Dist.LEXIS 119479, *15 (2017).

        In determining which venue is more likely to result in the swift administration of justice, courts in the 7th Circuit analyze the following factors: (1) trying related litigation together; (2) the relation of the community to the occurrence; (3) speed at which the case will proceed to trial; and, (4) familiarity with the applicable law. *See Jaramillo*, 664 F. Supp. 2d at 915-17.

**1.      Transfer Allows for the Consolidation with At Least *Two* Class Actions Pending in the Southern District of Florida With the Prospect of Consolidating *Five to Seven* Actions Total.[8]**

        "The most significant factor favoring transfer is the existence of related litigation in the transferee forum." *Merrill Lynch Business Fin. Servs. v. Marais*, 1995 U.S.Dist.LEXIS 15106,

---

        [8] *See* FN 2 and FN 6, *supra*.

*30 (N.D. Ill. 1995); *see also HFC Commercial Realty, Inc. v. Levine*, 1990 U.S.Dist.LEXIS 15319, *15 (N.D. Ill. 1990) ("a motion to transfer should be granted, if a related action is pending in the proposed transferee district"). Thus, "[a]s a general rule, cases should be transferred to districts where related actions are pending." *Waites v. First Energy Leasing Corp.*, 605 F. Supp. 219, 223 (N.D. Ill. 1985). The rule applies so long as consolidation is "practicable" under § 42(a) in the transferor court. *Countryman*, 681 F. Supp. at 484. Yet, "[e]ven in the absence of consolidation, informal synergies could be brought to bear [via transfer] to save costs and reduce duplicative proceedings." *See Qurio Holdings v. DirecTV, LLC*, 2015 U.S. Dist. LEXIS 56282, *18 (N.D. Ill. 2015) ("While litigating in the [transferee forum] may present modest geographical difficulties for [the plaintiff], the potential cost savings of having the [similar actions] in the same districts (albeit not this one) still exist.") (parenthesis in original).

Here, the pendency of **two nearly identical** actions in the Southern District of Florida weighs heavily in favor of transfer, especially in light of VPX's also concurrently-pending motions to transfer venue two *additional* actions from California as well (*Imran* and *Madison*). Consolidation in Florida is certainly practicable. *See* Fed. R. Civ. Proc. § 42(a) (where multiple actions before the court involve a common question of law or fact, the court may consolidate the actions). Yet, even if the Southern District of Florida were to decline to consolidate the five actions, it is still the most appropriate forum and, at the least, is likely to assign the related cases to the same judge thereby promoting judicial efficiency and providing case administration resoundingly superior to the alternative of each parallel action proceeding separately in different districts. *See* Internal Operating Procedures of the U.S. District Court for the Southern District of Florida, § 2.15.00(c).[9]

---

[9] VPX requests Judicial Notice, pursuant to Fed. R. Evid. 201, of the Southern District of Florida's Internal Operating Procedures available at:     https://www.flsd.uscourts.gov/sites/flsd/files/17-

Thus, the interests of justice, judicial economy, and sound judicial administration compel transfer in light of the two parallel actions pending in the Southern District of Florida and, even more so, in light of VPX's pending § 1404(a) motions in *Imran* and *Madison*.

## 2. Florida's Local Interest Weighs Heavily in Favor of Transfer.

"The administration of justice is served more efficiently when the action is litigated in the forum that is 'closer to the action.'" *Carillo v. Darden*, 992 F.Supp. 1024, 1026 (N.D. Ill. 1998) (citing *Paul v. Lands' End, Inc*., 742 F. Supp. 512, 514 (N.D. Ill. 1990); *see also Colida v. Kyocera Wireless Corp*., 2003 U.S.Dist.LEXIS 5046, *7 (N.D. Ill. 2003) (a court must consider "the relationship of the community to the issue of the litigation and desirability of resolving controversies in their locale."). For similar reasons, a "request for injunctive relief weighs in favor of transfer." *Law Bulletin Publ'g. v. LRP Publs*., 992 F.Supp. 1014, 1021 (N.D. Ill. 1998).

The Southern District of Florida is indisputably closest to the action and has the prevailing interest in deciding this controversy, because that is where VPX is headquartered, where all the relevant decisions were made and implemented, where the witnesses reside, and where the physical evidence and relevant premises are located. (*See* Declaration of Marc J. Kesten ("Kesten Decl.") ¶¶ 3-12.) Moreover, Plaintiff seeks to enjoin VPX's alleged deceptive practices (Complaint ¶ 71), which, if such relief is granted, must be implemented and monitored in Florida.

Whereas, by contrast, Illinois has no more interest in this dispute than any of the other 49 States (excepting, of course, Florida). While Illinois courts may have a general interest in

---

10-17-Internal-Operating-Procedures.pdf, providing at § 2.15.00(c): "Whenever an action or proceeding is filed in the Court which involves subject matter which is a material part of the subject matter of another action or proceeding then pending before this Court, or for other reasons the disposition thereof would appear to entail the unnecessary duplication of judicial labor if heard by a different Judge, the Judges involved shall determine whether the higher-numbered action or proceeding shall be transferred to the Judge assigned to the lower-numbered action."

protecting residents from allegations of nationwide false advertising, Florida has a greater, specific interest in preventing fraudulent practices by Florida companies employing Florida residents and conducting business in their State.  Thus, this factor favors transfer.  To hold otherwise would unfairly saddle the citizens of this District with jury duty on a decidedly Florida matter, while depriving the citizens of Florida from deciding a matter in which they have a significant interest.  *See Gulf Oil Corp.*, 330 U.S. at 508-509 ("Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.").

3.    **Florida's *Significantly* Less Congested Docket Weighs in Favor of Transfer.**

Here, transfer provides *a clear time advantage* for resolution of the case: filing to disposition is **195%** faster in the target district; and, filing to trial is **229% faster** in the target district.[10]  *See Arion, LLC v. LMLC Holdings, Inc*., 2018 U.S.Dist.LEXIS 211415, *11 (N.D. Ill. 2018) (defendants' citation to statistical evidence suggesting cases resolve more quickly in transferor court weigh in favor of transfer); *see also Industrial Partners, Ltd. v. CSX Transp., Inc.*, 1990 U.S. Dist. LEXIS 9215, at *9 (N.D. Ill. 1990) (finding "the important consideration of comparative court congestion heavily favor[ing] transfer where median time from filing to disposition was 11 months in transferor court and 23 months in this district).

4.    **Potential Application of Illinois Law Does Not Weigh Against Transfer.**

Although Plaintiff alleges violation of Illinois law, he also seeks to represent a "Multi-State Class" under the laws of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington.  (Complaint ¶ 43, FN 15.)  This Court and

---

[10] In terms of median time in months, filing to disposition in Florida is **3.9** and **7.6** in this District; and, filing to trial in Florida is **16.5** and **37.8** in this District (a difference of 1 year and 9 months).  Defendants request Judicial Notice, pursuant to Fed. R. Evid. 201 of the Federal Judicial Center, U.S. District Courts Caseload Profile, last visited on February 6, 2019:  https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2018.pdf.

the Southern District of Florida are equally capable of applying the laws of Plaintiff's putative "Multi-State Class." (*Id.*) "[F]ederal district courts often undertake the task of deciding foreign law." *Peterson v. U.S. Steel Corp.*, 624 F. Suup. 44, 46 (N.D. Ill. 1985); *Marquette Transp. Co. v. Trinity Marine Prods.*, 2006 U.S.Dist.LEXIS 92879, at *11 (N.D. Ill. 2006) ("federal courts today should be capable of ascertaining and applying the laws of any state.").

Taken altogether, the interest of justice factors overwhelmingly favor transfer such that it is the determining consideration in this analysis. Even so, as next discussed, balance of the convenience factors also weighs towards transfer.

## C.     The Convenience of the Parties and Witnesses Weigh Towards Transfer.

To evaluate the convenience of one venue over another, courts look at the following five factors: "(1) the plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease of access to sources of proof, (4) the convenience of the parties, and (5) the convenience of the witnesses." *Jaramillo*, 664 F.Supp.2d at 913-914.

### 1.     Plaintiff's Choice of Forum is Entitled to a Significantly Reduced Deference That is Outweighed by the Other Factors.

"The plaintiff's choice of forum is *usually* given substantial weight, particularly if it is also the plaintiff's home forum." *Jaramillo*, 664 F.Supp.2d 908, 914 (emphasis added). However, this factor is neutralized in this case for two reasons: ***First***, the weight afforded Plaintiff's choice is "*greatly discounted*" in putative nationwide class actions, such as this. *Jaramillo*, 664 F.Supp.2d 908, 914; *Georgouses v. NaTec Res., Inc.*, 963 F.Supp. 728, 730 (N.D.Ill.1997) ("[B]ecause plaintiff alleges a class action, plaintiff's home forum is **irrelevant**." (emphasis added)); *Genden v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 621 F.Supp. 780, 782 (N.D.Ill.1985) ("the location of the main class representative plaintiffs" is not a "factor[] to be considered under Section 1404(a)"); *Blake Constr. Co. v. International Harvester Co.*, 521

11

F.Supp. 1268, 1271-1272 (N.D. Ill. 1981) ("little rests on the choice [of forum] by a plaintiff representative of a nationwide class.").

**_Second_**, the weight is further reduced where, as here, "the chosen forum has relatively weak connections with the operative facts giving rise to the claim." *Von Holdt v. Husky Injection Molding Sys.*, 887 F.Supp. 185, 188 (N.D. Ill. 1995); *accord*, *Body Sci. LLC v. Boston Sci. Corp.*, 846 F. Supp. 2d 980, 992 (N.D. Ill. 2012); *Plotkin v. IP Axess, Inc.*, 168 F.Supp.2d 899, 902-903 (N.D. Ill. 2001) ("Illinois is plaintiffs' choice of forum, but their choice has no significant connection to their claim, as the heart of the controversy involves the allegedly false and misleading press releases created and disseminated in Plano, Texas [as opposed to Chicago where the plaintiff was exposed to the campaign]."); *see also Waites*, 605 F. Supp. at 222 (no significant contact where the allegedly fraudulent scheme arose out of the transferee district); *Espino v. Top Draw Freight*, 713 F.Supp. 1243, 1245 (N.D. Ill. 1989) ("The fact that plaintiffs reside here, without more, does not outweigh the other factors favoring transfer.").

Here, Plaintiff allegedly made a one-time online purchase of the product from GNC.com and, prior to doing so, read the product label from an undisclosed location. (Complaint ¶ 7). GNC.com is a website accessible from anywhere with an internet connection. There are no allegations *connecting* Plaintiff's causes of action to this District. (*Id.*) Indeed, every alleged instance of false advertising occurred on the product itself or online. (*Id.*, at ¶¶ 11-25). Thus, *every* district court across the nation shares the same nexus with the alleged causes of action, rendering any postulated connection with this District insignificant. Whereas, on the other hand, the conduct refuting Plaintiff's allegations *all* happened in Florida. For these reasons, the deference properly afforded Plaintiff's choice is slight, if any, and is significantly outweighed by the other factors.

2.      **Florida is the Situs of Material Events.**

The situs of material events is *not* where the putative class members allegedly suffered harm, but where defendant's misconduct allegedly took place.  *See e.g.*, *Georgouses*, 963 F.Supp. at 731; *see also Plotkin*, 168 F.Supp.2d at 903 (the "material events" are the creation and dissemination of false statements from corporate headquarters and not the receipt of such statements in the transferor district); *Jaramillo*, 664 F.Supp.2d at 914 ("the focus of this suit is decisions by Defendants to market and sell … items with allegedly misrepresented nutritional information, not the purchases by Plaintiffs"); *Rosen*, 152 F. Supp. 3d at 1060 (situs of material events is where "[t]he relevant decisions likely were made by Defendant's employees at its headquarters … not where customers made their purchases.").

Florida, without question, is the situs of material events.  VPX conducts *all* of its business operations at its headquarters in the South Florida.  (Kesten Decl. ¶¶ 3, 9, 12.)  All of the decisions at issue in the Complaint, and specifically those related to product development, testing, quality control, labeling, distribution, marketing, media, sales, and so on, were made in South Florida.  (*Id.*, at ¶ 9.)  The VPX laboratory and warehouse implicated by this action are also located in South Florida.  (*Id.*, at ¶¶ 9, 10; *see also* Complaint ¶ 11.)  By contrast, neither the dispute nor VPX has any prevailing contact with this District.

3.      **The Relative Ease of Access to Sources of Proof Weighs Towards Florida.**

For this factor, courts look to, for example, the location of documents, decision-making employees, or other evidence.  *See e.g., Jaramillo*, 664 F.Supp.2d at 914-915; *Plotkin v. IP Axess, Inc*., 168 F.Supp.2d at 903.  Here, the focus of documents, witnesses, and other physical

evidence is exclusively at VPX's headquarters where it maintains all of its books and records,[11] including those that may not be available in electronic format, but, likely will be relevant to the allegations in the Complaint. (Kesten Decl. ¶¶ 3-12.) On the other hand, class action plaintiffs, even a lead plaintiff, can be expected to contribute comparatively little documentary or other evidence to the action. Moreover, the possibility of viewing relevant premises is an "important consideration" weighing towards transfer. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). And, here, parties may seek expert examination of the products and/or processes ***at*** VPX, resulting in further unnecessary travel and expense if the case proceeds in Illinois. (*See* Complaint ¶ 11 alleging operative facts took place at the warehouse and laboratory in Florida).)

### 4. Convenience to the Witnesses Weighs Heavily Towards Transfer.

"There are two categories of witnesses to consider: party and non-party witnesses." *Rosen*, 152 F. Supp. 3d at 1061. "The convenience of non-party witnesses should be given more consideration than party witnesses (and their employees) under this factor, since party witnesses normally must appear voluntarily." *Id.* That said, employee witnesses are not irrelevant. *See Thomas v. Home Depot, U.S.A., Inc.*, 131 F.Supp.2d 934, 939 (E.D. Mich. 2001) ("It may be no less inconvenient for a witness who happens to work for a defendant corporation to travel hundreds of miles for judicial proceedings than it would be for any other witness to do so.").

To resolve this dispute, the parties will likely seek testimony from VPX employees, former employees, and other third-party witnesses who have participated in product development, purchase and processing of relevant ingredients, testing, quality control, manufacture, marketing, media, and sales, all of whom are believed to reside in or near Florida.

---

[11] The location of documents pertaining to the case tilts slightly in favor of transfer, notwithstanding "this age of electronic discovery [where] documentary evidence is easily transferable." *See Kapoor* v. *NRA of Am.*, 2018 U.S.Dist.LEXIS 181472, * 11 (N.D. Ill 2018).

(*See* Kesten Decl. ¶¶ 5-10, 12 (**identifying,** ***inter alia,*** **four third-party witnesses who reside in or close to Florida and the subject of their expected testimony**).).  In addition, the primary witness identified in the Complaint is VPX's founder, CEO, and CSO, John a.k.a Jack Owoc.  (Complaint ¶ 11.)  Plaintiff contends Mr. Owoc personally made the alleged misrepresentations on VPX's website.  (*Id.*)  Yet, Mr. Owoc, who resides in South Florida, personally oversees all corporate operations and is *integral* to VPX's daily operations.  (Kesten Decl. ¶ 12.)  Litigation in Illinois will disrupt business operations and significantly burden VPX, especially given the likelihood that Mr. Owoc will be forced to travel to Illinois to participate.  (*Id.*, at ¶ 3, 9, 14.)

     **5.**     **Convenience to the Parties Likewise Weighs Heavily Towards Transfer.**

     The convenience of the parties favors transfer where, as here, the defendant's headquarters is located in the transferee district and the bulk of the Court's inquiry will focus upon the defendant's acts; and, thus, the majority of depositions will involve defendant's witnesses who work in the transferee district.  *Simonoff v. Kaplan, Inc.*, 2010 U.S.Dist.LEXIS 26884, at *5-6 (N.D. Ill. 2010).  On these facts, "[i]t makes little sense to litigate a case in Illinois when virtually every material witness resides in [the transferee district], unless some other compelling reason motivates that decision."  *Id.*  Yet, no other *compelling* reason can be found.  "While it is true that the named Plaintiff resides in this District, the Plaintiff purports to represent a nation-wide class, and there likely are prospective plaintiffs in each and every state."  *Id.*  "**Should litigating this case in the [transferee district] prove too inconvenient for the named Plaintiff, then another named plaintiff can be substituted for h[im].**"  *Id*. (emphasis added).  Moreover, because VPX agrees to take Plaintiff's deposition in Illinois, he "will not be inconvenienced by a transfer of this action."  *Jaramillo*, 664 F.Supp.2d at 915 ("Because Defendants have agreed to take Plaintiffs' depositions in Illinois, they will not be inconvenienced by a transfer of this action to Kansas."); (*see also* Kesten Decl. ¶ 13).

## V.    <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, Defendant requests that this case be

transferred to the Southern District of Florida for the possible consolidation of, at least, five

parallel nationwide class actions in the forum that is the locus of the dispute.

Dated:  February 14, 2019                    **GORDON REES SCULLY MANSUKHANI LLP**

*VPX Pharmaceuticals, Inc. d/b/a VPX Sports*


By:  */s/ J. Hayes Ryan*
          J. Hayes Ryan, Esq.
          **GORDON REES SCULLY**
          **MANSUKHANI, LLP**
          One North Franklin, Suite 800
          Chicago, Illinois 60606
          (312) 565-1400
          hayesryan@grsm.com

## <u>CERTIFICATE OF SERVICE</u>

I, J. Hayes Ryan, an attorney, hereby certify that a copy of the above and foregoing was filed electronically with the Court of the United States District Court for the Northern District of Illinois (Eastern Division), this 14th day of February, 2019, using the CM/ECF system.

<u>/s/ J. Hayes Ryan</u>